**Berman Estate**

*David Kanner,* for petitioner.
*Murray Powlen,* for respondents.

PAWELEC, *J.,* November 19, 1974—This matter is presently before the court upon citation issued upon the five nieces and nephews of decedent to show cause why the awards payable to them as legatees of the above estate should not be marked satisfied and their respective answers thereto.

We first dealt with this case when the account thereof was heard before this court. William Berman had died testate, without issue surviving him. Testator bequeathed the residue of his estate as follows: one-third thereof to his wife, Edith Berman, and of the remaining two-thirds, he first left the sum of $5,000 to his nephew, Leonard Berman, with the remainder of his estate payable in equal shares to his brothers, Samuel and Murray Berman, and his sister, Tillie Levy, directing further that in the event that Murray Berman or Tillie Levy should predecease testator, the share of such decedent was to pass in equal shares, per capita, to the children of such decedent then living. All of the above parties in interest are living, with the exception of Tillie Levy, who predeceased testator, leaving to survive her as her issue, Claire Frantz, Bernice Kelly, Shirley Jowett, Harold Levy and Sherwin Levy, nieces and nephews of testator, entitled to take their deceased mother's share under the provisions.

The surviving spouse, Edith Berman, filed an election to take against the will, as a consequence

of which she became entitled to one-half of the distributable assets of the estate and one-half of all inter-vivos conveyances in which the decedent retained an interest to the extent of the interest retained.

Testator nominated his brothers, Murray Berman and Samuel Berman, executors and letters testamentary were issued to these parties. The account was duly filed and adjudicated by this court. There were no objections to the account nor the adjudication which was confirmed nisi on June 21, 1973. Subsequently, the executors filed a schedule of distribution showing each of the aforesaid nieces and nephews to be entitled to the sum of $1,422.32 from the proceeds of the estate.

The present controversy centers around a certain bank account in Western Savings Bank entitled "William Berman in trust for Murray B. Berman" in the sum of $16,668. This bank account was included in the account filed by the executor on one page and then subtracted out of the said account on another page. There is no dispute that Murray B. Berman did in fact receive the proceeds of the aforesaid bank account. It is admitted that Murray B. Berman did pay the sum of $1,500 to each of the aforesaid nieces and nephews. Mr. Berman states that the $1,500 payment was paid to the nieces and nephews on account of their legacy. The nieces and nephews argue that Mr. Berman made such payments pursuant to an agreement with his deceased brother, the testator, and can in no way reduce or be substituted for their legacy. Shortly after the will was probated, Murray Berman obtained physical possession of the bank book and transferred the proceeds thereof into another account under his name only. He then withdrew $7,500 from the ac-

count and had five $1,500 checks made payable to five nieces and nephews of testator here involved and, thereafter, personally delivered the checks to each of the respondents. These checks were not drawn from the estate funds but rather from Mr. Berman's own account. Mr. Berman admitted that he did not inform the attorney for the estate of these transactions whatsoever stating, "That was none of his business." He further admitted that he did not discuss the matter with the co-executor, his brother. All other legacies specified in the will as well as all debts and expenses of the estate were paid from the estate checking account prepared by counsel for the estate.

The testimony differed as to Murray Berman's statements to the nieces and nephews upon presenting the checks. The nieces and nephews presented testimony that Mr. Berman stated that the money "came from a special account that [their] uncle, William Berman, set aside for 'you kids to have.' And [their] Uncle Murray (Berman) was just handling or carrying out his wishes." Mr. Berman seems to have testified that he informed the respondents that he was giving them their legacies in advance.

I find the testimony presented by the nieces and nephews to be credible. I conclude that there was some type of agreement between the decedent and Murray Berman for the division of the money in this particular bank account. The testimony indicates that Murray Berman did obtain control of the bank book in order to comply with that agreement. I believe that when he delivered the checks which he had specifically drawn to the order of the said nieces and nephews, he did tell them that these were not funds of the estate. Mr. Berman's tes-

timony that he calculated their share and decided to pay the nieces and nephews their money immediately from his own funds is not credible. It is significant that the payments were made prior to the spouse's decision to take against the will. Thus, when the wife did so take she almost totally obliterated Mr. Berman's share of the bank account. It seems Mr. Berman is now trying to recoup his losses by having the nieces' and nephews' share of the legacy (amounting to $1,422.32 to each niece and nephew) marked satisfied. Special note is taken of the fact that Mr. Berman made these checks payable from personal funds rather than estate funds and never consulted the other appropriate parties, counsel and the co-executor; nor did he ever ask for an assignment of interest from the nieces and nephews; nor did he request that the estate reimburse him.

The wife's election to take against the will was effective against all inter-vivos transfers in which the testator reserved control, to the extent of that control, pursuant to Sections 2508 and 6111 of the Probate, Estates and Fiduciaries Code of June 30, 1972 (no. 164), 20 Pa. S. §§2508 and 6111, including this bank account. The wife has already received one-half of the proceeds of the said bank account and that one-half came completely from Mr. Berman's share of the assets. Thus, in fact, he has almost totally lost his interest in the account. If the entire amount had not been paid from Mr. Berman's share of the assets, the wife could have enforced contribution of $750 from each of the nieces and nephews. Under these circumstances, we will allow the awards to Claire Frantz, Bernice Kelly, Shirley Jowett, Harold Levy and Sherwin Levy to be marked satisfied as to $750 thereof and herewith direct that this amount be

transferred to Murray Berman. This result is both equitable and authorized by law.

Accordingly, I enter the following

## ORDER

I direct the clerk of the court to mark the awards to Claire Frantz, Bernice Kelly, Shirley Jowett, Harold Levy and Sherwin Levy satisfied to the extent of $750 each.

I award the sum of $3,750 ($750 from the shares of each of the following: Claire Frantz, Bernice Kelly, Shirley Jowett, Harold Levy and Sherwin Levy) to Murray Berman.